[No. 36107.   Department Two.   August 23, 1962.]

EMELIE BUXEL, *Respondent*, v. KING COUNTY, *Appellant.**

*Reported in 374 P. (2d) 250.

*Charles O. Carroll, James J. Caplinger,* and *William L. Paul, Jr.,* for appellant.

*Todd & Goodloe,* for respondent.

FINLEY, C. J.—This is an action for damages for trespass by water or taking land without just compensation. The trial court granted judgment for the plaintiff, and the defendant, King County, has appealed.

The respondent's land, on which is situated her residence, is located near Des Moines Way and South 107th Street in King County. Respondent alleged that the county collected surface waters in drains or artificial channels along the west side of Des Moines Way and caused them to be diverted beneath Des Moines Way at South 207th Street, thence along the north side and under South 207th Street, and onto her property. At the trial respondent contended that the surface waters thus spewed onto her land made ingress and egress difficult, and caused the value of her property to be depreciated.

The county did not deny respondent's allegations and contentions. Its defense was essentially a disclaimer of liability for respondent's drainage problems.

Respondent and her now deceased husband acquired the property concerned in 1921. From the time of acquisition until 1958, a drainage problem existed on the land caused by waters draining from surrounding areas of higher elevation through the system of culverts and ditches described above. The drainage was described at the trial as "seepage." Although it caused inconvenience, from what we can discern from the record no appreciable damage resulted. During 1958 and 1959 (the exact dates are nowhere supplied in the record), the county improved the roadways in the vicinity of Des Moines Way and South 200th. It appears that

property owners on the east side of Des Moines Way near that area were bothered by drainage waters. To alleviate the drainage problem of those property owners, the county, in connection with road improvement work, placed a culvert beneath Des Moines Way at South 200th. Since installation of the culvert, waters from the east side of Des Moines Way have drained to the west side, where they combine with waters draining down the west side, and follow a channeled course to respondent's property. The additional waters have changed respondent's relatively minor seepage problem to an inundation problem.

The trial court found, in effect, that the flow of water across respondent's land was increased by the acts of the county, and that the county must bear the responsibility for solving the problem. The difference between the value of respondent's property after the increased flow as compared with its value prior thereto was found to be $2,350.66. That figure was derived from testimony as to the estimated costs of underlaying respondent's property with drain pipe to handle the flow. Judgment was entered for the respondent, requiring the county to underlay respondent's land with drain pipes and pay the sum of $300 attorney's fees; or, in the alternative, to pay to respondent $2,650.66 ($2,350.66 for the cost of laying the drain pipe and $300.00 attorney's fees) plus costs and disbursements.

The respondent contends that the county's assignments of error are improper and fail to raise any question before this court. While the manner in which error is assigned is not commendable, we find that for the purposes of this case justiciable issues are presented to the court, and we will consider the arguments on their merits.

King County argues that the judgment of the trial court should be reversed, because (1) respondent's claim is barred by the statute of limitations; (2) the flow across respondent's land is of surface waters in a natural drainage course and no responsibility can attach for increasing or hastening the flow; and (3) the county has no drainage district powers and is without jurisdiction to order drainage work or to pay general tax money for the drainage work. A fourth

contention need not be considered, because no argument was directed in support thereof in appellant's brief. *Obde v. Schlemeyer* (1960), 56 Wn. (2d) 449, 353 P. (2d) 672.

In support of its first contention the county argues that the system of culverts and ditches located in the drainage area herein concerned was first established around 1920 and, therefore, if there has been any taking of respondent's land by virtue of trespass by water, as a result of the drainage system, it occurred when the system was first constructed. Thus, the county concludes, it is much too late in the game for respondent to complain.

The county's contention is unavailing. Respondent does not base her action on the inconsequential invasions of her property, caused by the county's maintenance of the primary system of ditches and culverts occurring prior to the diversion of waters accomplished by the 1958-59 project. Indeed, these invasions probably did not provide a basis for relief. *Wood v. Tacoma* (1911), 66 Wash. 266, 119 Pac. 859. See, generally, 18 McQuillin, Municipal Corporations §§ 53.132 - 53.144, pp. 515 - 563 (3rd ed. 1950). The injury about which respondent complains occurred when the acts of the county caused the flow of waters across her property to increase to the extent that substantial damage resulted. Assuming that the three-year limitation period of RCW 4.16.080 is controlling (see *Ackerman v. Port of Seattle* (1960), 55 Wn. (2d) 400, 348 P. (2d) 664, 77 A. L. R. (2d) 1344; and *Cheskov v. Port of Seattle* (1960), 55 Wn. (2d) 416, 348 P. (2d) 673), the respondent, by commencing her action on December 22, 1959, has easily satisfied the most stringent limitation period arguably applicable. The trial court correctly determined that respondent's claim was not barred by the statute of limitations.

The county's second contention is based primarily on passages in *Laurelon Terrace v. Seattle* (1952), 40 Wn. (2d) 883, 246 P. (2d) 1113, which state that "the flow of surface water along natural drains may be hastened or incidentally increased by artificial means, so long as the water is not ultimately diverted from its natural flow onto the property of another . . ." and "A city is not negligent if it

increases the flow of water through a natural drainway, due to streets and catchbasins, unless the drainage is increased beyond the capacity of the watercourse in its natural condition." According to the county's theory, surface waters can be discharged upon respondent's land with impunity because the "seepage" flowing across the land prior to 1958 established a natural drainway, and, as long as the additional rate or flow does not breach natural barriers of the drainage course, liability cannot attach to the county.

■ The *Laurelon* case does not control the disposition of this case because of factual differences. When a question is raised as to the existence of a natural watercourse, that question must be determined by the trier of fact. *Tierney v. Yakima Cy.* (1925), 136 Wash. 481, 239 Pac. 248. In the instant case the trial court, sitting as the trier of fact, refused to find that the drainage waters flowing through a system of ditches and culverts onto respondent's property established a natural drainage course. The trial court's findings are supported by substantial credible evidence, and this court, of course, cannot substitute its judgment for that of the trial court as to findings of fact adequately supported by the record. *Tenco, Inc. v. Manning* (1962), 59 Wn. (2d) 479, 368 P. (2d) 372; *Thorndike v. Hesperian Orchards, Inc.* (1959), 54 Wn. (2d) 570, 343 P. (2d) 183. The *Laurelon* case deals with the question of a municipality's liability for increased drainage (caused by paving and surfacing streets) into an unquestioned natural stream. The case accurately states the general rule of nonliability on the part of a municipality for additional drainage into a natural stream as long as the stream is not diverted or filled beyond its natural flow. In the instant case the factual question as to the character of the drainage flow having been resolved by the trial court, the legal question as to the liability of a municipality for collecting and diverting waters through a system of artificial channels and discharging them onto the property of a private landowner is presented.

■ The answer to the question thus presented is, we think, aptly stated in 18 McQuillin, Municipal Corpora-

tions § 53.144 at pp. 556-558 (3rd ed. 1950). The following quotation from that work indicates both the applicable rule and the relationship of the rule announced in the *Laurelon* case.

" . . . It is an exception to the general rule of non-liability, in that a municipality is liable if, in the course of an authorized construction, it collects surface water by an artificial channel, or in large quantities, and pours it, in a body, upon the land of a private person, to his injury. Under this rule, while municipal authorities may pave and grade streets and are not ordinarily liable for an increase in surface water naturally falling on the land of a private owner where the work is properly done, they are not permitted to concentrate and gather such water into artificial drains or channels and throw it on the land of an individual owner in such manner and volume as to cause substantial injury to such land and without making adequate provision for its proper outflow, unless compensation is made, and for breach of duty in this respect an action will lie."

We hold that the trial court was correct in holding that the county is responsible for the trespass by water across respondent's land, accomplishing thereby a taking of respondent's property without compensation.

Appellant's third contention may pose some interesting problems, but they are outside the scope of this case. Complications in connection with satisfaction of an alleged liability are not a defense to the action alleging liability. The basic question before this court is whether the trial court erred in holding the county responsible for the damage done to respondent's property. Having adjudicated liability, our task is completed and dissertations in relation to the scope of the powers of the county or its jurisdiction would be inappropriate.

The decision of the trial court should be and it is hereby affirmed.

DONWORTH, OTT, HUNTER, and HAMILTON, JJ., concur.